NOSSAMAN LLP
DREW R. HANSEN (SBN 218382)
dhansen@nossaman.com
SUZANNE C. JONES (SBN 157496)
sjones@nossaman.com
18101 Von Karman Avenue, Suite 1800
Irvine, CA 92612
Telephone: 949.833.7800
Facsimile: 949.833.7878

NOSSAMAN LLP
Madeline G. Hassell (SBN 347161)
mhassell@nossaman.com
777 South Figueroa Street, 34th Floor
Los Angeles, CA 90017
Telephone: 213.612.7800
Facsimile: 213.612.7801

Attorneys for Defendant
LGCY POWER, LLC

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHEILA TOVAR, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>LGCY POWER, LLC; Does 1 through 100, inclusive,<br><br>Defendants. | Case No: '25CV2627 AJB MSB<br><br>**DEFENDANT LGCY POWER, LLC'S NOTICE OF REMOVAL OF PUTATIVE CLASS ACTION** |

Pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446 and 1453, Defendant LGCY Power, LLC ("LGCY Power" or "Defendant") hereby timely and properly removes the above-referenced action from the California Superior Court for the County of San Diego to the United States District Court for the Southern District of California for further proceedings, reserving any and all defenses. Defendant removes this action pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446 and 1453. As grounds for removal, Defendant states as follows:

## I. PROCEDURAL HISTORY

1. On August 21, 2025, Plaintiff Sheila Tovar ("Plaintiff") filed this putative wage and hour class action lawsuit against Defendant in San Diego County Superior Court captioned *Sheila Tovar, on behalf of herself and other similarly situated v. LGCY Power, LLC; Does 1 through 100, inclusive* (the "Complaint" or "Compl."), Case Number 25CU044343C (the "State Court Action").

2. The Complaint in the State Court Action was served on Defendant on September 5, 2025. Copies of the Complaint and Summons filed in the State Court Action are attached hereto as **Exhibits 1** and **2**, respectively.

3. In addition to **Exhibits 1** and **2**, the State Court Action contains the following additional process, pleadings, and orders: Civil Case Cover Sheet (attached as **Exhibit 3**); Notice of Case Assignment and Case Management Conference (attached as **Exhibit 4**); Notice to Litigants of E-Filing Requirements and Imaged Documents (attached as **Exhibit 5**); Alternative Dispute Resolution Packet (attached as **Exhibit 6**); and Proof of Service (attached as **Exhibit 7**).[1]

///

///

[1] In compliance with 28 U.S.C. § 1446(a), Defendant hereby notes that, to the best of its knowledge, the documents attached as Exhibits 1 through 7 hereto constitute all process, pleadings, and orders filed in the State Court Action. (*See* Declaration of Drew R. Hansen ["Hansen Decl."] at ¶¶ 4-5.)

## II. PLAINTIFF'S PUTATIVE CLASS ACTION COMPLAINT[2]

4. Plaintiff's Complaint alleges that Plaintiff brings this putative class action on behalf of various classes, including, but not limited to, an alleged "Misclassification Class" consisting of "[a]ll current and former employees employed by Defendant as 'independent contractors' in California at any time from four (4) years prior to the filing of the initial Complaint in this matter through the date notice is mailed to a certified class member who was misclassified as an 'independent contractor.''[3] (Compl. ¶ 34(A).)

5. Based on information and belief (including a review of its internal business records), Defendant notes that Plaintiff entered into an Energy Consultant Agreement with Defendant on or about January 3, 2023 whereby Plaintiff agreed

---

[2] Defendant denies all the allegations in Plaintiff's Complaint, maintains that it has not engaged in any unlawful conduct of any kind, and denies that Plaintiff is entitled to recover anything by virtue of this action. The statements made in this Notice of Removal regarding Plaintiff, the putative class, and/or the putative sub-class's purported damages are proffered for the sole purpose of establishing that diversity jurisdiction exists under 28 U.S.C. § 1332(d), including that minimal diversity is present, the putative class includes more than 100 individuals, and the amount in controversy exceeds five million dollars, and nothing more. Defendant does not waive, and hereby expressly preserves, any and all substantive and procedural defenses that may exist regarding any of Plaintiff's claims, including but not limited to, disputing that Plaintiff was improperly classified as an independent contractor, disputing it is proper for Plaintiff to pursue any class-wide claims, disputing that any class or sub-class could ever be certified, and disputing Plaintiff's purported damages and all other requests for relief.

[3] The Complaint also alleges that Plaintiff brings this putative class action on behalf of an "Overtime Class", "Meal Period Class", and "Rest Period Class" consisting of all "direct" and "temporary" non-exempt employees of Defendant for the same four-year period of time (i.e., "on behalf of herself and other members of the general public similarly situated … current, former, and/or future employees of Defendant as direct employees as well as temporary employees employed through temp agencies who work as hourly non-exempt employees.") (See Compl. ¶ 3 and ¶¶ 34(B)-(D).) Plaintiff's Complaint further alleges a "Wage Statement Class" on behalf of all "direct" and "temporary" non-exempt employees of Defendant for a one-year period of time. (See Compl. ¶ 34(E).).

she would be an independent contractor and contracted with Defendant to be a sales representative or consultant[4] to sell solar panels, solar panel-related products and services offered by LGCY Power ("Agreement"). (*See* Declaration of Damian Peterson ["Peterson Decl."], at ¶ 6.)

6. Despite voluntarily accepting an Agreement that expressly stated she would be an independent contractor, not an employee, Plaintiff contends in her Complaint that "Defendants [m]isclassified Plaintiff and similarly situated employees as Independent Contractors." (Compl. ¶ 14.)

7. Plaintiff's Complaint then alleges seven (7) claims against Defendant, including the following causes of action: (1) Declaratory Relief; (2) Willful Misclassification (Cal. Labor Code §§ 226.8, 2753); (3) Failure to Pay Overtime (Cal. Labor Code §§ 510, 1194); (4) Failure to Provide Meal Periods (Cal. Labor Code §§ 226.7, 512); (5) Failure to Provide Rest Breaks (Cal. Labor Code § 226.7); (6) Failure to Provide Accurate and Itemized Wage Statements (Cal. Labor Code § 226); and (7) Violation of California Business and Professions Code §§ 17200 *et seq*.

8. Based on the claims alleged in the Complaint, Plaintiff seeks an assortment of remedies and damages on behalf of herself and the putative classes, including declaratory relief, statutory penalties, unpaid wages (overtime wages), meal and rest period penalties, and injunctive relief, restitution, attorneys' fees, and other relief. (*See generally* Complaint as well as pp. 24-27 Prayer for Relief.)

9. While there may be additional grounds justifying removing this action to the United States District Court for the Southern District of California, the Complaint is, at a minimum, removable under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d)(2) and 1453(b).

---

[4] Plaintiff's Complaint erroneously refers to Plaintiff and similarly situated employees as having followed "recipes and cooking procedures," (Compl. ¶¶ 15, 57), prescribed by Defendant, and having been "Cooks" for Defendant (*id.*, ¶ 53).

10. Defendant has further satisfied all procedural requirements of 28 U.S.C. § 1446 along with any other applicable laws or statutory provisions and thereby timely removes this action to the United States District Court for the Southern District of California pursuant to 28 U.S.C. §§ 1332(d)(2), 1441, 1446, and 1453.

## III. ORIGINAL JURISDICTION

11. As noted above, this Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332, as amended by CAFA.[5] "CAFA gives federal courts jurisdiction over certain class actions, defined in § 1332(d)(1), if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84-85 (2014).

12. This case can be removed under CAFA because minimal diversity exists (*i.e.*, at least one plaintiff and one defendant are citizens of different states), this is a putative class action in which the alleged putative class includes at least 100 members, and the amount in controversy exceeds $5,000,000.00, exclusive of interest and costs.

## IV. ALL OF THE REQUIREMENTS FOR JURISDICTION TO EXIST UNDER CAFA ARE MET

13. CAFA "significantly expanded federal jurisdiction in diversity class actions." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 398 (9th Cir. 2010).

[5] Venue is also proper in the Southern District of California because cases being removed from San Diego County Superior Court are required to be removed to the Southern District of California. *See* 28 U.S.C. § 84(d) ("The Southern District [of California] comprises the counties of … San Deigo."); *see also* 28 U.S.C. § 1441(a)(cases should be removed to the federal district court "for the district and division embracing the place where such action is pending"); *PT United Can Co. Ltd. v. Crown Cork & Seal Co.*, 138 F.3d 65, 72 (2d. Cir. 1998) (court specified in § 1441(a) is the correct district court even if venue was improper in the state court in which case was originally filed).

CAFA was enacted "to facilitate adjudication of certain class actions in federal court," and its "provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Dart Cherokee*, 574 U.S. at 89; *see also Jauregui v Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022) (reversing district court's remand order; criticizing district court for "putting a thumb on the scale against removal" and rejecting as incorrect the "notion that removal under CAFA should be met with a level of skepticism and resistance"); *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) ("Congress intended CAFA to be interpreted expansively").

14. The United States Supreme Court clarified the standards for notices of removal under CAFA in 2014, instructing that notices of removal need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold and do not need to include evidentiary submissions. *Dart Cherokee,* 574 U.S. at 87 ("Congress, by borrowing the familiar 'short and plain statement' standard from Rule 8(a), intended to 'simplify the "pleading" requirements for removal' and to clarify that courts should 'apply the same liberal rules [to removal allegations] that are applied to other matters of pleading.'"). Evidence establishing the amount in controversy is required "only when the plaintiff contests, or the court questions, the defendant's allegations." *Id.* at 89.

**A. THE PARTIES ARE MINIMALLY DIVERSE**

15. A defendant's allegation of citizenship in a notice of removal based on diversity jurisdiction may be based solely on information and belief. *Ehrman v. Cox Comm., Inc.*, 932 F.3d 1223, 1227 (9th Cir. 2019); *see also Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (natural person's state citizenship is determined by state of domicile; person's domicile is her permanent home, where she resides with intention to remain or to which she intends to return).

16. Unlike a removal under 28 U.S.C. § 1332(a), which requires complete

diversity of citizenship, an action removed under CAFA (i.e., 28 U.S.C. § 1332(d)(2)), only requires minimal diversity. Specifically, a removing defendant need only show that one "member of a class of plaintiffs [is] a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A); *see also Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 US 161, 165 (2014) (Minimal diversity means that a court may exercise jurisdiction over a putative class action if "any member of the class of plaintiffs is a citizen of a State different from any defendant.").

17. There is no question that CAFA's minimal diversity requirement is satisfied here, as discussed below.

**1. Plaintiff Is A California Citizen**

18. Based upon information and belief and according to Plaintiff's own allegations in the Complaint, Defendant hereby submits and alleges that Plaintiff has been and remains up through the date of this removal a citizen of California. In fact, Plaintiff alleges, and admits, in Paragraph 3 of her Complaint that she "is and was a resident of California" for the entirety of the putative class period.[6] (Compl. ¶ 3.)

**2. Defendant Is A Utah Citizen**

19. LGCY Power, the only defendant named in the Complaint (*see generally*, Compl.), is a limited liability company with its principal place of business and headquarters located in Lehi, Utah. (*See* Peterson Decl. ¶¶ 3-4.)

20. Courts treat limited liability companies the same as partnerships for diversity jurisdiction purposes and therefore look to the citizenship of each member of the company. *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998) ("the

---

[6] Plaintiff's residence is also listed in Southern California, according to the information she provided to Defendant during her time as an independent contractor sales representative. (*See* Peterson Decl., at ¶ 7); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) (place of residence "is *prima facie* the domicile").

citizenship of an LLC for purposes of the diversity jurisdiction is the citizenship of its members"); *see also Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 898-899 (9th Cir. 2006) (limited liability company is citizen of every state of which its members are citizens); *V & M Star, LP v. Centimark Corp*. 596 F3d 354, 356 (6th Cir. 2010) (if any member of a LLC is itself a partnership or association (or another LLC), the court must know the citizenship of each "sub-member").

21. LGCY Power has only two members: Robinson Holdings, LLC ("Robinson Holdings") and LHT Ventures, LLC ("LHT Ventures"). (Peterson Decl. ¶ 3.) Robinson Holdings and LHT Ventures were both formed in Utah, have their principal places of business in Utah, and are domiciled in Utah as well. (*Id*.) They each have only one member. (*Id*.) The sole member of Robinson Holdings is Doug Robinson (an individual), who is a citizen of Utah. (*Id*.) The sole member of LHT Ventures is Luke Toone (an individual), who is likewise a citizen of Utah. (*Id*.) LGCY Power is therefore a citizen of Utah for diversity jurisdiction purposes, since all of its members and the members of its members (or sub-members) are Utah citizens.

22. Because Plaintiff is a citizen of California and Defendant is a citizen of Utah, CAFA's minimal diversity requirement is clearly satisfied.

## B. THE ALLEGED PUTATIVE CLASS INCLUDES MORE THAN 100 MEMBERS

23. As explained above, Plaintiff seeks to certify various putative classes, including putative classes consisting of all individuals classified as independent contractors or as "direct employees as well as temporary employees through temp agencies in California" within the four years prior to filing of the Complaint (the "California Class"). (Compl. ¶¶ 3 and 34(F)).

24. Specifically, Plaintiff seeks to certify four putative classes consisting of the following at any time from four years prior to the filing of the Complaint through at least the present: (i) "[a]ll current and former employees employed by

Defendants as ‘independent contractors’ in California” (the “Misclassification Class”) (*id.* ¶ 34(A)); (ii) “[a]ll current and former hourly non-exempt employees employed by Defendants as direct employees as well as temporary employees through temp agencies in California … who worked more than eight (8) hours in a workday, forty (40) hours in a workweek and/or seven (7) days in a workweek,” (the “Overtime Class”) (*id.* ¶ 34(B)); (iii) “[a]ll current and former hourly non-exempt employees employed by Defendants as direct employees as well as temporary employees through temp agencies in California … who worked shifts more than five (5) hours yet” did not receive a duty-free meal period, (the “Meal Period Class”) (*id.* ¶ 34(C)); and (iv) “[a]ll current and former hourly non-exempt employees employed by Defendants as direct employees as well as temporary employees employed through temp agencies in California … who worked shifts of at least three-and-a-half (3.5) hours who did not receive all required duty-free rest periods of net ten (10) minutes every four (4) hours,” (the “Rest Period Class”) (*id.* ¶ 34 (D)).

25. Plaintiff also seeks to certify a putative class of “[a]ll current and former hourly non-exempt employees employed by Defendants as direct employees as well as temporary employees through temp agencies in California at any time from one (1) year prior to the filing of this Complaint … who received inaccurate or incomplete wage and hour statements,” (the “Wage Statement Class”) (*id.* ¶ 34(E)).

26. LGCY Power disputes Plaintiff’s allegations of wrongdoing (including the notion that Plaintiff and/or any other independent contractor were employees) and also disputes that any class or sub-class is allowed to be pursued or could ever be certified. Nevertheless, based on information and belief and Defendant’s review of its own internal business records and data, Defendant asserts that it contracted with at least 2,000 independent contractor direct seller sales representatives who fall within the Complaint’s putative class definition (i.e., “[a]ll individuals who

were classified as independent contractors and who performed work for Defendant[] in the State of California from four years" prior to the filing of this action to at least up through present). (*See* Compl. ¶ 34(A); Peterson Decl. ¶ 10). Thus, the number of members of Plaintiff's alleged putative class is "at least 100" as required by 28 U.S.C. § 1332(d)(5)(B).

**C. THE AMOUNT IN CONTROVERSY EASILY EXCEEDS $5,000,000**

**1. <u>Relevant Law</u>**

27. As pointed out above, the Supreme Court clarified in 2014 that a notice of removal is only required to include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold and need not include evidentiary submissions. *Dart Cherokee*, 574 U.S. at 87-89; *see also Ibarra*, 775 F.3d at 1195 (notice of removal initially need only include a "plausible allegation that the amount in controversy exceeds the jurisdictional threshold"); *Patel v. Nike Retail Services, Inc.*, 58 F. Supp. 3d 1032, 1037 (N.D. Cal. 2014) ("[D]efendants do not need to prove to a legal certainty that the amount in controversy requirement has been met. Rather, defendants may simply allege or assert that the jurisdictional threshold has been met"). Thus, a "defendant's amount-in-controversy allegation should be accepted" as sufficient for removal "if not contested by the Plaintiff [via a motion for remand] or questioned by the Court." *Dart Cherokee*, 574 U.S. at 87. If a plaintiff or court does contest the amount-in-controversy allegations, the parties must then be given the opportunity to submit proof of the amount in controversy and the court will decide, by a preponderance of the evidence, whether the amount in controversy requirement has been satisfied. *Id*. at 88-89.

28. Aggregation of claims is expressly authorized in determining the amount in controversy in CAFA cases. 28 U.S.C. § 1332(d)(6) ("In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of

interest and costs.")

29. The Supreme Court and Ninth Circuit have also repeatedly advised "that no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee*, 574 U.S. at 89; *see also Jauregui*, 28 F.4th at 992-993 (reversing remand order; criticizing district court's skeptical and "anti-removal" threshold posture as ignoring precedent and contravening the text and understanding of CAFA). It is therefore improper for a district court to view a CAFA removal with "'skepticism and resistance.'" *Bonetti v. Tristrux*, LLC, Case No. 24-cv-01319-LB2024, 2024 WL 3225905, at *4 (N.D. Cal. June 27, 2024) (citing the *Jauregui* case discussed below).

30. The Ninth Circuit reiterated just a few years ago that district courts must interpret CAFA jurisdiction broadly. Specifically, in *Jauregui v. Roadrunner Trans. Servs, Inc.*, 28 F.4th 989 (9th Cir 2022), the Ninth Circuit held that it "is inescapable at this early stage of the litigation [that a] removing party <u>**must be able to rely**</u> **'on a chain of reasoning that includes <u>assumptions</u> to satisfy its burden to prove by a preponderance of the evidence that the amount in controversy exceeds $5 million**,' as long as the reasoning and underlying assumptions are reasonable." *Id*. at 993 (emphasis added). The Ninth Circuit further warned in *Jauregui* that it is reversible error for district courts to demand "certitude" over "assumptions used in calculating the amount in controversy" and explained that if a defendant relies on assumptions that the court disagrees with "the district court should [generally] consider the claim under [a] better assumption—not just zero-out the claim." *Id*. at 993-996.

31. The Ninth Circuit explained in *Jauregui* that "[a]t [the removal] stage of the litigation, the defendant is being asked to use the plaintiff's complaint—much of which it presumably disagrees with—to estimate an amount in controversy," and this is also "at a stage of the litigation before any of the disputes over key facts have been resolved." *Jauregui*, 28 F.4th at 993. As such, according to the Ninth Circuit,

**the defendant's amount in controversy assumptions in support of removal "will always be just that: *assumptions*."** *Id*. (bold emphasis added; italics in original).

32. In *Jauregui*, the Ninth Circuit held that the district court's analysis of the defendant's amount-in-controversy assumptions and calculations in that case had been unreasonably harsh, inappropriate and inconsistent with precedent. The *Jauregui* court emphasized that the Ninth Circuit has defined "amount in controversy" as "simply the amount at stake in the underlying litigation" – **which "does not mean likely or probable liability" but rather "*possible* liability**." *Id*. at 994 (bold emphasis added; italics in original).

33. *Jauregui* fundamentally altered the lens through which district courts in the Ninth Circuit must evaluate amount-in-controversy assumptions regarding CAFA removals, as has been recognized by a multitude of district courts throughout California. For example, in *Serrieh v. Jill Acquisition, LLC*, 2023 WL 8796717 (E.D. Cal. Dec. 20, 2023), the Eastern District of California explained that "[d]istrict court decisions since *Jauregui* have struck 'a more lenient tone … regarding the sufficiency of declarations to support amount-in-controversy analyses.'" *Serrieh*, 2023 WL 8796717 at *3 (citing cases). Applying the new framework, the *Serrieh* court concluded, among other things, it is "reasonable to assume that all or nearly all [individuals] in the class would be entitled to recovery of waiting time penalties." *Id*. at *5. The court likewise held that a 100% violation rate for wage statement violations was "reasonable". *Id*. at *5-*6.

34. Numerous other district courts are in accord with *Serrieh*'s interpretation and application of *Jauregui*. *See, e.g., Cocroft v Equipment Share.com Inc.*, No. 24-cv-00645-BAS-AHG, 2024 WL 3877274, at *6-*11 (S.D. Cal. Aug. 19, 2024) (denying motion to remand); *Chavoya v. Merrill Gardens L.L.C.*, No. 1:24-cv-00268-KES-BAM, 2024 WL 3219724, at *2-*10 (E.D. Cal. June 28, 2024) (same); *Bonetti*, 2024 WL 3225905, at *5-*8 (same); *Murillo v.*

*Target Corp.*, No. LACV 23-03033 JGB (MRW), 2023 WL 4553597, at *5-*11 (C.D. Cal. July 14, 2023) (same); *Salonga v. Aegis Sr. Comtys., LLC*, No. 22-cv-00525-LB, 2022 WL 1439914, at *2-*8 (N.D. Cal. May 6, 2022) (same); *Amezcua v. CRST Expedited Inc.*, No. 4:22-cv-06501-YGR, 653 F.Supp.3d 712 (N.D. Cal. Jan.31, 2023) (same); *Jacob v. CSL Plasma, Inc.*, No. 24-cv-01807-H-DEB, 2024 WL 5004529 (S.D. Cal. Dec.6, 2024) (same); *Price v. McGee*, No. 23-cv-02705-HSG, 2023 WL 8458268 (N.D. Cal. Nov.1, 2023) (same).

35. While Defendant denies that a class action should even be permitted to go forward, denies that this action is appropriate for class treatment, and denies that it is liable for any of Plaintiff's claims in any way, LGCY Power has calculated the amount in controversy for purposes of this notice by taking the claims in Plaintiff's Complaint at face value and then aggregating the claims pursuant to 28 U.S.C. § 1332(d)(6). As discussed further below, the total amount in controversy regarding Plaintiff's claims far exceeds $5,000,000, exclusive of interest and costs.

### 2. <u>The Complaint's Allegations And Claims</u>

36. Given the allegations in Plaintiff's Complaint, there is no question the amount in controversy exceeds the jurisdictional threshold of $5 million. As previously noted, Plaintiff alleges seven claims against LGCY Power, including claims for willful misclassification (2nd Cause of Action), failure to pay overtime (3rd Cause of Action), failure to provide meal periods (4th Cause of Action), failure to provide rest periods (5th Cause of Action), failure to provide accurate itemized wage statements (6th Cause of Action), and violations of California's unfair business practices statute (7th Cause of Action). (*See generally*, Complaint.)

37. Plaintiff's Complaint also seeks a wide array of damages, including statutory penalties, declaratory relief, unpaid wages (overtime wages), meal and rest period penalties, injunctive relief, restitution, attorneys' fees, and other relief. (*See generally*, Complaint and 24-27 Prayer for Relief.)

38. Plaintiff also repeatedly alleges in her Complaint that "Defendant[]

ha[s]" a "policy," "practice," and/or "procedure" of wage and hour violations under the California Labor Code, (Compl. ¶¶ 18, 21, 24, 26, 29, 31, 51, 59, 67, 75, 76, 83, 84, 93, 94, 99, 101), including for misclassifying employees as independent contractors, failing to pay overtime, failing to provide meal and rest periods, and failing to provide accurate itemized wage statements.

39. In addition, Plaintiff alleges that "sustained damages" arising out of Defendant's misconduct are "typical" of the putative classes. (*Id.* ¶ 35(C)).

**3. Plaintiff's Cause of Action for Willful Misclassification, Standing Alone, Far Exceeds the $5,000,000 Amount-In-Controversy Threshold**

40. Plaintiff's Complaint alleges that "Defendant[] knew Plaintiff and similarly situated employees were hired to be Defendant['s] employees, yet knowingly and voluntarily misclassified Plaintiff and similarly situated employees as 'independent contractors' in order to avoid Plaintiff's and similarly situated employees' status." (Compl. ¶ 58.)

41. Plaintiff's Complaint further alleges that "Defendant[] engaged in a pattern or practice of such a violation." (*Id.* ¶ 59.)

42. California Labor Code section 226.8(a) makes it unlawful for an employer to engage in "[w]illful misclassification of an individual as an independent contractor." Subsection (b) of section 226.8 further provides that should a court determine that an employer violated subsection (a) then the "employer shall be subject to a civil penalty of not less than five thousand dollars ($5,000) and not more than fifteen thousand dollars ($15,000) for each violation…" Further, subsection (c) of section 226.8 provides that if an employer "has engaged in or is engaging in a pattern or practice of these violations, the [ ] employer shall be subject to a civil penalty of not less than ten thousand dollars ($10,000) and not more than twenty-five thousand dollars ($25,000) for each violation…"

43. Here, based on information and belief and Defendant's review of its internal business records and data, Defendant submits that at least 2,000 individuals worked as independent contractor sales representatives in California and fall within Plaintiff's Misclassification Class definition. (*See* Peterson Decl., ¶ 10.) Put another way, Defendant hereby alleges that there are at least 2,000 individuals who worked as an independent contractor sales representatives in California from August 21, 2021 (i.e., four years prior to the filing of the Complaint) up through May 1, 2025.[7] (*Id.*) Because Plaintiff is contending that all 2,000 individuals were willfully misclassified as independent contractors, the Complaint asserts that Defendant is allegedly subject to a penalty for each putative class member within the putative Misclassification Class. (*See* Compl. ¶¶ 58-60.) Accordingly, Plaintiff's willful misclassification claim alone exceeds the $5 million amount-in-controversy requirement set by CAFA.

44. Indeed, given that there are at least 2,000 individuals who fall within the Misclassification Class definition (*see* Peterson Decl., ¶ 10), Plaintiff's misclassification claim, standing alone, puts at least **$10,000,000** in controversy under Labor Code section 226.8(b). This figure is calculated as follows: 2,000 [minimum # of individuals who worked as an independent contractor sales representative in California during the relevant time period] x $5,000[8] [lowest possible penalty under Labor Code section 226.8(b)] = $10,000,000.[9]

---

[7] The numbers provided in this calculation are conservative estimates for several reasons, including that May 1, 2025, is several months prior to the present date.

[8] As noted above, Labor Code section 226.8(b) provides that the penalty can be no less than $5,000 but no more than $15,000 per violation. (Cal. Labor Code § 226.8(b).) Thus, the lowest possible penalty per violation as alleged in the Complaint is $5,000 per misclassified independent contractor. By using the lowest possible penalty provided for by Section 226.8(b), Defendant is being conservative and underestimating the true amount in controversy for this claim. Indeed, if the highest figure in this range is used (i.e., $15,000 per violation), the amount in controversy would be at $30,000,000.

[9] This figure is underinclusive of the potential misclassification penalties sought by

45. Moreover, this calculation is extremely conservative because Labor Code section 226.8(c) provides that if any such miscalculation occurs due to a "pattern or practice," as Plaintiff alleges here, (Compl. ¶ 59), then the minimum penalty should be at least $10,000 per violation and could equal $25,000 per violation. Taking Plaintiff's allegations on their face, Plaintiff's misclassification claim thus puts in excess of **$20,000,000** in controversy (i.e., 2,000 [minimum # of individuals who works as an independent contractor sales representative in California during the relevant time period] x $10,000[10] [lowest possible penalty under Labor Code section 226.8(c) for a pattern or practice violation] = $20,000,000).[11]

---

the Complaint, since, among other things, the relevant class period is allegedly ongoing according to the Complaint and thus extends well beyond May 1, 2025. (Compl. ¶ 53.) The amount is also underinclusive because Labor Code section 226.8 provides for a penalty up to $15,000 per willful misclassification under subsection (b). Finally, the $10,000,000 figure is underinclusive of the potential misclassification penalties sought by the Complaint because there are more than 2,000 individuals who fall within the Misclassification Class from August 21, 2021, through the date of filing of this Removal.

[10] Labor Code section 226.8(c) provides that the penalty can be no less than $10,000 but no more than $25,000 per violation. (Cal. Labor Code § 226.8(c).) Thus, the lowest possible penalty per violation as alleged in the Complaint is $10,000 per misclassified independent contractor. By using the lowest possible penalty provided for by Section 226.8(c), Defendant is being ultra conservative and underestimating the true amount in controversy for this claim. Indeed, if the highest figure in this range is used (i.e., $25,000 per violation), the amount in controversy would be at $50,000,000.

[11] This figure is underinclusive of the potential misclassification penalties sought by the Complaint, since, among other things, the relevant class period is ongoing according to the Complaint and thus extends beyond August 21, 2025. (Compl. ¶ 53.) The amount is also underinclusive because Labor Code section 226.8(c) provides for a penalty up to $25,000 per willful misclassification as noted above. Finally, the $20,000,000 figure is underinclusive of the potential misclassification penalties sought by the Complaint because there are more than 2,000 individuals who fall within the Misclassification Class from August 21, 2021 through the date of filing of this Removal.

### 4. Attorneys' Fees Authorized By Statute Are Properly Included In The Amount- In-Controversy Calculus

46. Attorney fees are properly included in the amount in controversy if an underlying statute authorizes their award (which is the case here due to the Labor Code). *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998) (attorney fees award may be included in the amount in controversy when an underlying statute authorizes their award).

47. Plaintiff alleges she seeks attorneys' fees in connection with the claim in her Complaint. (*See, e.g.*, Complaint, ¶¶ 1, 71, 97, 101; Prayer for Relief item 5.)

48. In class action cases within California, prevailing plaintiffs have requested, and courts have frequently awarded, attorneys' fees in the range of 25% to 33% of the overall recovery. (*See Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491-92 (E.D. Cal. 2010) (citing to five recent wage and hour cases where federal court judges approved fee awards that ranged from 30% to 33% and similarly approving percentage of the fund award of 33% to class counsel); *Romero v. Producers Dairy Foods, Inc.*, 2007 WL 3492841, at *1-4 (E.D. Cal. Nov. 14, 2007) (approving award of 33% of common fund); *McCrary v. Elations Company, LLC*, 2016 WL 769703, at *10 (C.D. Cal., 2016) (approving award of 26% of total settlement amount); *see also Ramirez v. HV Global Management Corp.*, 2022 WL 1210402, at *8 (N.D. Cal. Apr. 25, 2022) ("The Court will not zero-out Defendants' attorneys' fees calculations for the amount-in-controversy").

49. In light of this pattern illustrated by court rulings and based on the Complaint's allegations, it is anticipated that Plaintiff's attorneys will seek at least 25% of any amounts recovered as awardable attorneys' fees here. Thus, it is reasonable to assume that Plaintiff's Complaint could be seeking in excess of **$2,500,000** or more in attorneys' fees for Plaintiff's misclassification claim alone, (i.e., 0.25 x $10,000,000). When this figure is added to the $10,000,000 or more Plaintiff seeks in connection with her misclassification claim alone, the total amount

in controversy based on Plaintiff's misclassification claim alone and potential attorneys' fees associated therewith is at least **$12,500,000**.[12]

### 5. Additional Damages Are Alleged In Connection With Plaintiff's Other Claims

50. Plaintiff's Complaint also alleges, on behalf of herself and the putative class, six *other* claims *in addition to* her misclassification claim that place many millions of additional dollars in controversy. Indeed, Plaintiff alleges on behalf of herself and at least 2,000 other putative class members that Defendant violated a series of wage and hour laws, including: failing to pay overtime wages for all hours worked, failing to provide lawful meal periods or compensation in lieu thereof, failing to authorize or permit lawful rest breaks or provide compensation in lieu thereof, failing to provide accurate itemized wage statements, and unfair business practices. (*See generally*, Complaint.)

51. Each of these additional claims alleged in the Complaint significantly increase the total amount in controversy with respect to this case. Attorneys' fees associated with each of these additional claims would further increase the amount-in-controversy. The additional claims and any associated attorneys' fees are nevertheless not specifically analyzed as part of this Notice of Removal because Defendant has already proffered sufficient allegations and supporting evidence demonstrating that CAFA's amount-in-controversy requirement is easily satisfied. That said, Defendant reserves the right to amend or supplement this Notice of

---

[12] Again, Defendant's attorneys' fees calculations are extremely conservative. As noted above, Plaintiff alleges that Defendant's misclassification was the result of a "pattern or practice" of willful misclassification, (Compl. ¶ 59), subject to a higher minimum penalty under subsection (c) of Labor Code section 226.8. Applying the same 25% assumption to the potential $20,000,000 (or possibly up to $50,000,000 or more) in controversy on Plaintiff's misclassification claim under Section 226.8(c), Plaintiff could be seeking in excess of $5,000,000 in attorneys' fees. For instance, when 25 percent is added to the $20,000,000 or more Plaintiff seeks in connection with her misclassification claim under Section 226.8, the amount in controversy is at least $25,000,000.

Removal, including the right to submit additional evidentiary declarations supporting and/or buttressing the amount in controversy should Plaintiff attempt to remand the action for any reason or should the Court have any questions.

## V. <u>REMOVAL IS TIMELY AND PROPER</u>

52. This Notice of Removal is timely pursuant to 28 U.S.C. §§ 1446(b) and 1453(b) as it has been filed within thirty (30) days of the date on which service of the State Court Action on Defendant was complete (i.e., within thirty (30) days of September 5, 2025).

53. Pursuant to section 1446(a) of title 28, removal is properly made to the Southern District of California as the district court embracing the place where the State Court Action is pending. (*See* 28 U.S.C. § 84(d).)

54. The documents attached as **Exhibits 1** through **7** hereto constitute all of the process, pleadings, and orders served on Defendant in the State Court Action. *See* 28 U.S.C. § 1446(a). (Hansen Decl. ¶¶ 4-5.)

55. Defendant reserves the right to amend or supplement this Notice of Removal, and the right to submit additional evidentiary declarations and argument supporting and/or buttressing the amount in controversy should Plaintiff attempt to remand the action for any reason or if the Court has any questions. Defendant further reserves all defenses it has to Plaintiff's claims. Defendant disputes Plaintiff's claims in their entirety and contends only that the nature of Plaintiff's purported claims, as pled, demonstrates that removal is proper under CAFA.

56. Defendant is providing Plaintiff, by and through her counsel, written notice of the filing of this Notice of Removal and all other papers as required by section 1446(d) of title 28. Further, Defendant is filing a copy of this Notice of Removal and all related papers with the Clerk of the Superior Court of the State of California, County of San Diego where the State Court Action is currently pending.

57. Because Defendant is the only existing named defendant in this action, no other party's consent to this removal is required.

## VI. PRAYER

58. Wherefore, Defendant requests that the above-captioned action now pending against it in the Superior Court of California, County of San Diego, be removed to this Court.

Date: October 3, 2025

NOSSAMAN LLP

By: s/ *Drew R. Hansen*
Drew R. Hansen

Attorneys for Defendant
LGCY POWER, LLC

# INDEX OF EXHIBITS

| EXHIBIT | DESCRIPTION |
|---|---|
| Exhibit 1 | Summons |
| Exhibit 2 | Class Action Complaint |
| Exhibit 3 | Civil Cover Sheet |
| Exhibit 4 | Notice of Case Assignment and Case Management Conference |
| Exhibit 5 | Notice of E-Filing Requirements |
| Exhibit 6 | Alternative Dispute Resolution Information |
| Exhibit 7 | Proof of Service of Summons |